# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

FRIZELL BRETT,                          )
                                        )
      **Movant,**                        )
                                        )
vs.                                     )    **Case No. 4:09CV01942 ERW**
                                        )
UNITED STATES OF AMERICA,               )
                                        )
      **Respondent.**                   )

## MEMORANDUM AND ORDER

This matter comes before the Court on Movant Frizell Brett's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. [doc. # 1]

## I.    BACKGROUND AND PROCEDURAL HISTORY

On November 20, 2003, a federal grand jury indicted Movant Frizell Brett ("Movant") on one count of possession with intent to distribute more than five grams of cocaine base, in violation of 18 U.S.C. § 851.  Thereafter, the Government filed an information on April 9, 2004, to enhance any penalty imposed upon Movant pursuant to 21 U.S.C. §§ 841(b)(1)(B)(iii) and 851, which, because of a prior drug conviction, triggered a mandatory minimum sentence of ten years.  After waiving his right to a jury trial, Movant was tried and convicted before this Court, and the Court imposed a sentence of 120 months imprisonment, followed by an eight-year term of supervised release.  Movant timely appealed his conviction, arguing that he had not voluntarily consented to a search of his residence and therefore the results of the search should have been suppressed.  The Eighth Circuit affirmed Movant's conviction.  *United States v. Brett*, 131 F. App'x  499 (8th Cir. 2005).  Because Movant asserts that there is newly-discovered evidence that warrants a new trial, the evidence presented at his trial is described below in some detail.

The primary prosecution witness was Detective Corby Campbell of the St. Louis Metropolitan Police Department. His partner, Detective Mark McMurry, testified during the prosecution's rebuttal. According to their testimony, on May 27, 2003, Campbell received a tip from a confidential informant ("CI"). The CI told Campbell that an individual named "Fritz" had a large amount of cocaine. The CI gave Fritz's address as 4302 Linton in St. Louis, and also provided descriptions of Fritz and his vehicle. Based on prior investigations, Campbell determined that Fritz was, in fact, Movant. Campbell and McMurry then drove to the Linton address. Subsequently, Movant arrived in a vehicle matching the description provided by the CI. Movant told Campbell and McMurry he had a small amount of crack in his residence for his personal use. Movant then consented to a search of his residence. Campbell notified other officers in the area that Movant had consented to a search, and Sergeant Michael Deeba, Detective Terrell Robinson, and Detective Bobby Garrett arrived at the residence to assist. Upon entering the residence, Campbell detected a "strong, pungent odor" that he associated with cocaine. Campbell and Deeba remained with Movant while McMurry, Robinson, and Garrett conducted a sweep-search of the residence, confirming no other individuals were present. Movant then led Cambpell and McMurry to the kitchen, where the detectives saw a weighing scale, a razor blade, six bags of suspected cocaine, and four bags of suspected marijuana in plain view on the kitchen table. Movant was immediately arrested. Seven more bags of suspected cocaine were discovered under a box on the kitchen table. Garrett searched the living room of the residence where he discovered $2,060 in cash inside a shoe box in a living room closet.

Movant offered the testimony of two witnesses, Terrell Caldwell and Carlos Powell, both of whom claimed to be present when Campbell and McMurry first arrived at Movant's residence.

This testimony contradicted the testimony of Campbell and McMurry, as well as the police report, all of which indicated that no other individuals were present. Both witnesses claimed they used Movant as a barber and were friends with Movant. Both Caldwell and Powell testified that they left the scene before officers conducted the search of Movant's residence.

Movant also testified on his own behalf. Movant had previously been convicted of crimes involving cocaine. He denied consenting to have his residence searched. While Movant admitted signing a form reflecting that $2,060 had been seized from him, he testified that more money was actually seized from him. He also testified that he told the officers where the money was located. Movant admitted to having marijuana and small amounts of cocaine at his residence, but denied having any drugs on the kitchen table, claiming the officers brought in the drugs from a storage area in the same building as his residence. According to Movant, the cocaine in his possession was used to pay people to cut his grass.

The newly-discovered evidence that forms the basis for Movant's Motion involves Detective Bobby Garrett, one of the officers assisting in the search. Garrett was one of three officers who conducted a sweep-search of the residence; he also discovered the $2,060 in cash in the living room closet. Several years after Movant's trial, Garrett pled guilty before this Court to six federal crimes stemming from theft of money, planting evidence, lying to federal agents, and falsifying lab forms, search warrants, and police reports in connection with events in 2007 and 2008. Other officers implicated in these events were Leo Liston and Vincent Carr. None of the other officers involved in the search of Movant's residence have been implicated. The crimes to which Garrett pled guilty were not directly related to Movant's original case. However, Movant does claim that Garret planted the drugs found in his residence, and Garrett's subsequent offenses

did involve the manipulation and planting of evidence.

## II.  STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may seek to "vacate, set aside or correct [a] sentence" on the grounds  that "the sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255(a).  To obtain relief under § 2255, a movant must allege a violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice."  *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. (1989)) (internal quotations omitted).

Claims brought under § 2255 may also be limited by procedural default.  A movant "cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not."  *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994) (citing *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992)).  Further, even constitutional or jurisdictional claims not raised on direct appeal cannot be raised in a § 2255 motion "unless a petitioner can demonstrate (1) cause for default and actual prejudice or (2) actual innocence."  *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).  Finally, "issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255."  *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001).

If a movant is not procedurally barred from making a § 2255 motion, the Court must hold an evidentiary hearing to consider the claims made therein "[u]nless the motion and the files and

4

records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. §

2255(b). Thus, a movant is entitled to an evidentiary hearing "when the facts alleged, if true,

would entitle [the movant] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996)

(quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir. 1986)). A court may dismiss a claim

without an evidentiary hearing "if the claim is inadequate on its face or if the record affirmatively

refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043 (citing *Larson v.*

*United States*, 905 F.2d 218, 220-21 (8th Cir. 1990)).

## III.    DISCUSSION

Movant bases his motion on newly-discovered evidence, namely Garrett's criminal

conviction.[1] In essence, Movant argues that Garrett's subsequent criminal conviction

corroborates his testimony that the majority of the drugs found during the search were planted,

and that this evidence requires Movant be given a new trial.

A § 2255 motion based on newly-discovered evidence is treated the same as a motion for

a new trial under Fed. R. Crim. P. 33. *Lindhorst v. United States*, 658 F.2d 598, 602 (8th Cir.

1981). For a new trial to be granted on the basis of newly-discovered evidence,

> (1) the evidence must have been discovered after the trial; (2) the failure to discover the
> evidence must not be attributable to a lack of diligence on the part of the petitioner; (3)
> the evidence must not be merely cumulative or impeaching; (4) the evidence must be
> material; and (5) the evidence must be likely to produce an acquittal if a new trial is
> granted.

*United States v. Duke*, 50 F.3d 571, 576-77 (8th Cir. 1995) (citing *English v. United States*, 998

F.2d 609, 611 (8th Cir. 1993)); *see also United States v. Fuller*, 557 F.3d 859, 863-64 (8th Cir.

---

[1]Movant also argues that the Motion is not subject to procedural default. Since the
Government does not argue that procedural default applies, the Court will address the merits of
Movant's claims.

2009) (identical standard applies to a motion for a new trial); *United States v. Yerkes*, 345 F.3d 558, 562 (8th Cir. 2003) (same).

A different test applies if the newly-discovered evidence involves a claim that a prosecution witness has perjured himself. *Duke*, 50 F.3d at 577. To meet this less stringent test, a movant must only show that there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Lindhorst*, 658 F.3d at 602; *see also United States v. Agurs*, 427 U.S. 97, 103 (1976); *English*, 998 F.2d at 611; *United States v. Runge*, 593 F.2d 66, 73 (8th Cir. 1979). However, this test only applies if the prosecutor either knew, or should have known, that the testimony was false, or the prosecutor knew that unsolicited testimony was false. *English*, 998 F.2d at 611. Additionally, this test requires that the testimony must have actually been false. *Id*. In other words, if a movant can demonstrate that the testimony was, in fact, false and that the prosecutor either knew or should have known the testimony was false, then the less stringent reasonable likelihood test set forth in *Lindhorst* applies.

The Eighth Circuit applied both tests in *English*, a case that involves similar issues and facts to the present case. *See id*. In *English*, the movant had been convicted on drug charges based on the testimony of his arresting officers and a co-conspirator. *Id*. at 610. English was found with 4.9 grams of cocaine. Two arresting officers, White and Sorenson, and English's co-conspirator testified that English had swallowed some cocaine during the arrest. This testimony was crucial because the trial court found that English was responsible for more than 5 grams of cocaine, even though only 4.9 grams of cocaine were found on his person. Because of a prior drug conviction, this finding triggered the ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(iii).

Among English's arguments for relief were claims that his co-conspirator had committed perjury and that there was newly-discovered evidence involving official misconduct by the arresting officers who had testified. *Id*. at 611-12. Based upon affidavits submitted by his co-conspirator's cellmates, English claimed that his co-conspirator perjured himself at trial. *Id*. at 611. Assuming that these affidavits established that perjury was committed, the court found that English had not established that the prosecutors either knew or should have known the testimony was false, and therefore could not prevail under that claim. *Id*. at 611-12.

English's second basis for relief was newly-discovered evidence. *Id*. at 612. Officer White was charged with, and then acquitted of, stealing evidence. Officer Sorenson was charged with perjury and altering official documents; he later pled guilty to the document altering offense. None of the charges originated from English's case. The court found that Officer Sorenson's testimony was cumulative of other testimony and therefore his subsequent criminal conviction could not be a basis for a new trial. The court noted that "[h]ad Officer Sorenson been the only witness to the incident, his subsequent guilty plea for misrepresenting drug quantities to a court might cast sufficient doubt upon the veracity of his statement to warrant a new trial. . . ." *Id*. at 612. Regarding Officer White, the court noted he was acquitted of the charges against him, and that the charges did not involve misrepresenting drug quantities to a court. The court concluded this evidence was not likely to produce an acquittal if a new trial were granted. *Id*.

In the present case, Movant's claim that evidence was planted necessarily implies that the prosecution witnesses perjured themselves. However, Movant does not qualify for the reasonable likelihood test. The only newly-discovered evidence is that after Movant's trial, Garrett was convicted of crimes that did involve misconduct and tampering with evidence, but

that were not related to Movant's case.  This evidence does not conclusively show that any testimony by a prosecution witness was in fact false.  Additionally, there is no evidence suggesting that the prosecutor either knew or should have known the testimony was false at the time.  Thus, even if Movant's allegations of perjury were true, he does not meet the requirements for the relaxed standard.  *See English*, 998 F.2d at 611.  In sum, Movant cannot meet either necessary prong to qualify for the reasonable likelihood test.

Applying the more stringent standard, in light of *English*, evidence of Garrett's subsequent criminal conviction is not likely to result in an acquittal in the event of a retrial.  In *English*, the Eighth Circuit held that the newly-discovered evidence was not likely to lead to acquittal where one testifying officer had been accused and acquitted of misconduct, another testifying officer pled guilty to a criminal charge for altering documents, and the co-conspirator was accused of perjury.  *English*, 998 F.2d at 611-12.  Here, in contrast, Garrett had only limited involvement in Movant's case.[2]  Garrett merely assisted in conducting a sweep-search of Movant's residence, and then located $2,060.  Unlike in *English*, Garrett's testimony was not central to the prosecution's case; he did not even testify at Movant's trial.  Campbell and McMurry, two officers who have not been accused of or implicated in wrongdoing,[3] both testified that they found the drugs in Movant's kitchen after Movant led them to the kitchen.  Garrett did not plead guilty to any crimes connected to Movant's case.  Even had Garrett testified

---

[2]Contrary to Movant's claims, Garrett did not discover the drugs found in Movant's residence.  Rather, Detective Campbell testified that the Movant led him and his partner to the drugs and Detective McMurry corroborated this testimony.

[3]Movant claims that Detective Campbell had recently been demoted, but the testimony at trial only indicated that Campbell had been transferred.

at Movant's trial, his testimony would have been cumulative of that of the other officers. Evidence of his criminal convictions would have been mere impeaching evidence, which would be insufficient to establish a right to a new trial. *See id.* In sum, the case for a new trial here is less compelling than it was in *English*, where a new trial was not granted. Thus, Movant has not demonstrated that a new trial should be granted in his case.

## IV.     CERTIFICATE OF APPEALABILITY

The Court finds that Movant has not made a substantial showing of the denial of a constitutional right as is required before a certificate of appealability can be issued. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (explaining that a "substantial showing" is a showing that the "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings"). Thus no certificate of appealability shall issue.

## V.     CONCLUSION

While Garrett's criminal conduct may reflect poorly on the reputation of police officers generally, his conviction does not undermine the credibility of the other officers who testified at Movant's trial. Thus, the mere fact of Garrett's conviction by itself, without more evidence, does not warrant a new trial in this case. Movant's conviction stands on the testimony of two officers who are untarnished by Garrett's crimes. Moreover, Garrett did not play a significant role in the investigation or arrest of Movant. Movant has not identified any evidence which would indicate a prosecution witness committed perjury, or that the prosecutor was aware or should have been aware of any alleged perjury. There is no factual dispute over Garrett's conviction. Consequently, the Court concludes that Movant's Motion will be denied without an evidentiary

hearing.

Accordingly,

**IT IS HEREBY ORDERED** that Movant Frizell Brett's Motion Under 28 U.S.C. §

2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [doc. #1] is

**DENIED**.

**IT IS FURTHER ORDERED** that the Court shall not issue a certificate of appealability

as to any claim raised in Movant's Motion.

So Ordered this <u>17th</u> Day of December, 2010.


_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE